NICOLA T. HANNA
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
LAUREN RESTREPO (Cal. Bar No. 319873)
ROGER A. HSIEH (Cal. Bar No. 294195)
Assistant United States Attorneys
General Crimes Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone:    (213) 894-3825/0600
     Facsimile:    (213) 894-0141
     E-mail:       Lauren.Restrepo@usdoj.gov
                   Roger.Hsieh@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>         Plaintiff,<br><br>              v.<br><br>MALISHA BROOKS et al.,<br><br>         Defendants. | No. CR 18-00237(A)-JFW-1<br><br>GOVERNMENT'S SENTENCING POSITION FOR DEFENDANT MALISHA BROOKS<br><br>Hearing Date: November 5, 2018<br>Hearing Time: 8:30 a.m.<br>Location:     Courtroom of the<br>              Honorable John. F.<br>              Walter |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Lauren Restrepo and Roger A. Hsieh, hereby files its sentencing position for defendant Malisha Brooks.

///

///

///

This sentencing position is based upon the attached memorandum of points and authorities, the presentence investigation report and disclosed recommendation letter, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: October 15, 2018    Respectfully submitted,

NICOLA T. HANNA
United States Attorney

LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division


    /s/ *Lauren Restrepo*
LAUREN RESTREPO
ROGER A. HSIEH
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

In March and April 2018, defendant MALISHA BROOKS ("defendant") conspired to extort a well-known celebrity victim J.D. (the "victim") out of large sums of money by threatening to publicly disclose the details and contents of a video containing sensitive and damaging information about the victim if the victim did not meet defendant's and her co-conspirators' demands for as much as $2,000,000.  For this conduct, on August 17, 2018, defendant pleaded guilty to Count One of a seven-count superseding indictment, which charged defendant with conspiracy to commit extortion, in violation of 18 U.S.C. § 1951(a). (Dkts. 49, 75, 20.)

The United States Probation Office ("USPO") filed its Presentence Investigation Report ("PSR") and Recommendation Letter on September 28, 2018.  (Dkts. 87-88.)  The USPO calculated a total offense level of 22 based on: a base offense level of 9; a 16-level enhancement for an intended loss amount over $1,500,000; and a 3-level decrease for acceptance of responsibility.  The USPO calculated the defendant's criminal history category was I, yielding an imprisonment range of 41-51 months under the United States Sentencing Guidelines ("USSG" or the "Guidelines").  The USPO calculated a combined Guidelines term of 1 to 3 years supervised release and a statutorily mandatory special assessment of $100.

The USPO recommends that defendant be sentenced to: (1) a below-Guidelines sentence of 30 months' imprisonment; (2) a one-year period of supervised release; and (3) a mandatory special assessment of $100.

The government has no objections to the USPO's calculation of the total offense level and criminal history category for defendant. The government also concurs with the USPO's recommendations of (1) a one-year period of supervised release and (2) a mandatory special assessment of $100 to be paid to the United States. However, based on the factors set forth in § 3553(a), including the nature and circumstances of the offense, the need to afford adequate deterrence to defendant and others, and the need to promote respect for the law, the government recommends a low-end guidelines sentence of 41 months' imprisonment.

**II.   STATEMENT OF FACTS**

From at least March 6, 2018, and through April 14, 2018, defendant conspired with co-defendant Samantha Curow to extort the victim out of at least $2,000,000 by threatening to publically release a sensitive and damaging video of the victim if the victim did not pay. (PSR ¶ 14; Plea Agreement ¶ 11.) During the course of the conspiracy, defendant communicated with co-conspirator Curow by text message and instructed her on how to induce the victim to part with up to $2,000,000 by threatening the distribution of the video. (PSR ¶ 14; Plea Agreement ¶ 11.) For example, defendant directed co-conspirator Curow to send the victim a screenshot from the video to induce the victim to part with $2,000,000. (PSR ¶ 14, Plea Agreement ¶ 11.)

The next month, defendant's involvement in the extortion attempt escalated and between April 10 through April 14, 2018, defendant engaged in several telephone conversations with a person she believed to be a representative of the victim, but who was in fact an undercover law enforcement officer. (PSR ¶ 16; Plea Agreement ¶ 11.)

During one call with the undercover officer, defendant confirmed that she knew public release of the video would devastate the victim's reputation and business activities, but asserted that she could ensure that the video would not be publicly released if, and only if, the victim paid a sufficient sum of money to her and her co-conspirators. (PSR ¶ 16; Plea Agreement ¶ 11.) During another call, defendant told the undercover officer that, absent payment from the victim, she would release the video back to those who had provided her with it, with the expectation that they would likely publicly release the video. (PSR ¶ 14; Plea Agreement ¶ 11.) Over the next few days, defendant had additional calls with the undercover officer in which she repeatedly communicated that without payment from the victim, the video would be released. (PSR ¶ 16; Plea Agreement ¶ 11.) On April 14, 2018, defendant was arrested before the attempted extortion could be completed. (PSR ¶ 18.)

**III. THE PRESENTENCE REPORT**

The USPO calculated defendant's adjusted offense level as 25, pursuant to the following calculation:

| | | |
|---|---|---|
| Base Offense Level: | 9 | USSG § 2B3.3(a) |
| Specific Offense Characteristics: | | |
| Loss Exceeding $1,500,000 | +16 | USSG § 2B3.3(b)(1)(B); USSG § 2B1.1(b)(1)(I) |

(See PSR ¶¶ 23-30.) After a two-point downward adjustment for acceptance of responsibility under USSG § 3E1.1(a), and a one-point downward adjustment under USSG § 3E1.1(b)[1], the USPO calculated

---

[1] Under USSG § 3E1.1(b), upon a motion from the government, an additional one-level reduction applies to a defendant who timely notifies authorities of her intent to enter a guilty plea, thereby

3

defendant's total offense level as 22.  (PSR ¶ 34.)  The government does not object to the USPO's calculation of defendant's total offense level.  Nor does the government object to the USPO's calculation of defendant's criminal history score and category, which it determined, respectively, to be 0 and I.  (PSR ¶¶ 36-42.)

### A. Concurrence with Sixteen-Level Enhancement for Intended Loss Amount Over $1,500,000

The government concurs with the USPO that a 16-level enhancement under USSG § 2B1.1(b)(1)(I) applies in this case because the intended loss amount is over $1,500,000.  Application Note 3 to Section 2B1.1 states that the loss calculation under this section is the greater of the actual loss or the intended loss related to the offense.  USSG § 2B1.1, App. Note 3(A).  The Guidelines define "intended loss" as the "pecuniary harm that the defendant purposely sought to inflict." USSG § 2B1.1, App. Note 3(A)(ii).  Here, defendant admitted to conspiring to extort up to $2,000,000 from the victim is exchange for not publically releasing a damaging and embarrassing video of the victim. (Plea Agreement ¶ 11; PSR ¶ 14.)  The enhancement is supported by the factual basis contained in the Plea Agreement and admitted to by defendant at her change of plea.  Specifically, defendant admitted that she conspired with co-conspirator Curow to

---

permitting the government to avoid preparing for trial and allowing the Court to allocate resources efficiently.  USSG § 3E1.1(b).  Here, defendant pleaded guilty after the government had undertaken substantial trial preparation, including filing multiple motions in limine and jury instructions, meeting with trial witnesses, drafting exhibit lists, witness statements, and assembling trial exhibits. Nevertheless, the government believes that the one-level reduction is appropriate in this case because a superseding indictment was filed prior to trial.  Upon the filing of the superseding indictment, defendant timely notified the government of her intent to enter a guilty plea.  For these reasons, the government believes the additional one-level reduction under § 3E1.1(b) is appropriate in this case and moves accordingly.

4

induce the victim to part with up to $2,000,000 and that she intended to induce the victim to part with that amount. (Plea Agreement ¶ 11; see also PSR ¶¶ 14-16.) Thus, the 16-level enhancement for an intended loss amount greater than $1,500,000 applies.

### IV. THE GOVERNMENT'S SENTENCING RECOMMENDATION

The government recommends that the Court impose a low-end sentence of 41 months of imprisonment, followed by a one-year period of supervised release, and a special assessment of $100. The government submits that such a sentence is sufficient, but not greater than necessary, to address the offense at issue, taking into account all the factors the Court must consider under 18 U.S.C. § 3553(a). See United States v. Booker, 543 U.S. 220, 260 (2005).

A 41-month term of imprisonment, which reflects a sentence at the low end of the Guidelines range in this case, appropriately reflects the nature and circumstances of the offense, as well as the need for the sentence to promote respect for the law and afford adequate deterrence to defendant and others from committing extortion by non-violent threat.

As noted in the PSR, defendant entered the conspiracy as early as March 2018, when she counseled and instructed co-defendant Curow on how to induce the victim to part with a much as $2,000,000 by threatening to release a video containing sensitive and damaging information about the victim. (PSR ¶ 14.) But defendant's conduct did not stop there. Instead, she escalated her involvement in the attempted extortion, engaging in numerous telephone conversations in which she negotiated the demanded amount with someone she thought was a representative of the victim but who was really an undercover agent. (PSR ¶ 16, Plea Agreement ¶ 11) During those calls defendant

admitted that she knew public release of the video would damage the victim's reputation and business activities. (PSR ¶ 16, Plea Agreement ¶ 11.) Defendant's conduct in this case was extremely serious. The nature of the threat was serious in that defendant threatened to expose intimate details of the victim's private life to the public in attempt to shame and humiliate him. Moreover, the amount demanded of the victim was significant. Indeed, defendant used the victim's celebrity status and his fear of harm to his reputation and businesses to induce him to part with $2,000,000. A sentence of 41 months of imprisonment would reflect the serious nature of the crime of extortion, even when committed by "non-violent" threat to reputation. It would also deter others from committing such crimes and taking advantage of a victim's celebrity status to threaten economic and reputational harm.

Finally, a sentence of 41 months would promote respect for the law. This is a high-dollar extortion case involving the intimate details of the victim's private life. A sentence of 41 months would send a message that the law will not tolerate extortion, even when it is "non-violent," in which a victim's reputation and business activities are threatened.

That said, while defendant's actions were significant and showed a clear desire to exploit and capitalize on the victim's fears, defendant's conduct was nonviolent and appears to be her first criminal offense. (PSR ¶¶ 37-42.) Additionally, as noted in the disclosed Recommendation Letter, defendant is a single mother who has held down a steady job at a bank for over a decade prior to this incident. (Recommendation Letter at 4.) Thus, it appears unlikely that defendant will pose a danger to the community after serving low-

end sentence. For these reasons, the government does not believe that a sentence above the low-end of the Guidelines would be necessary to comply with the purposes set forth in Sections 3553(a)(1) and (a)(2).

## V.   CONCLUSION

For the foregoing reasons, a sentence of 41 months' imprisonment; followed by a one-year term of supervised release; and a $100 special assessment would be sufficient, but not greater than necessary, to comply with the purposes of 18 U.S.C. § 3553(a). The government respectfully requests that the Court sentence defendant accordingly.